**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **AGNES TEBYANIAN,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:14-CV-01385-BH** |
| | § | |
| **CAROLYN W. COLVIN** | § | |
| **Acting Commissioner of** | § | |
| **Social Security,** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM OPINION AND ORDER

Pursuant to the consent of the parties and the order of transfer dated June 24, 2014, this case has been transferred for the conduct of all further proceedings and the entry of judgment. Before the Court are *Plaintiff's Brief on Review of the Denial of Disability Benefits by the Commissioner of Social Security*, filed July 25, 2014 (doc. 15), and *Defendant's Brief*, filed August 22, 2014 (doc. 16). Based on the relevant filings, evidence, and applicable law, the Commissioner's decision is **REVERSED**, and the case is **REMANDED** for further administrative proceedings.

## I. BACKGROUND[1]

### A. Procedural History

Agnes Tebyanian (Plaintiff) seeks judicial review of a final decision by the Commissioner of Social Security (Commissioner) denying her claim for supplemental security income under Title XVI of the Social Security Act. (Doc. 15 at 3.) On May 13, 2011, she applied for supplemental security income, alleging disability beginning August 1, 2004. (R. at 10.) Her application was

[1] The background information comes from the transcript of the administrative proceedings, which is designated as "R."

initially denied on August 30, 2011, and upon reconsideration on January 24, 2012. (*Id.*) She requested a hearing before an administrative law judge (ALJ), and subsequently appeared and testified at a hearing held on August 15, 2012. (*Id.*) On November 21, 2012, the ALJ issued his decision finding Plaintiff not disabled. (*Id.* at 7.) The Appeals Council denied her request for review on January 10, 2013, making the ALJ's decision the final decision of the Commissioner. (*Id.* at 1–4.) Plaintiff timely appealed the Commissioner's decision to the United States District Court pursuant to 42 U.S.C. § 405(g).

**B. <u>Factual History</u>**

**1. Age, Education, and Work Experience**

Plaintiff was born in 1964. (R. at 39.) At the time of the hearing, she was 47 years old and had completed four years of college. (*Id.* at 37, 108, 151.) She had past relevant work as a court translator, a substitute teacher, and a business owner. (R. at 117.)

**2. Medical Evidence**

On August 28, 2004, after being diagnosed with stage III colon cancer, Plaintiff underwent surgery to remove a portion of her colon. (*Id.* at 618.)

On October 8, 2004, she received her first dose of chemotherapy. (*Id.* at 607.) Five days later, she complained of back and shoulder pain, which she described as secondary to her anxiety. (*Id.*) On November 12, 2004, she received her third dose of chemotherapy, reporting nausea and vomiting but no back pain. (*Id.* at 618.)

On November 15, 2004, she saw Charles Connor, M.D., at North Texas Regional Cancer Center, to receive her fourth dose of chemotherapy. (*Id.* at 663.) He noted that her anxiety appeared to be "a very large component" of her nausea and vomiting. (*Id.*) He reviewed CT scans of her

abdomen and pelvis and an MRI of her brain, which all appeared normal. (*Id.*)

On January 12, 2005, Plaintiff saw Dr. Connor to receive her eighth and final dose of chemotherapy. (*Id.* at 653.) Plaintiff reported "ongoing problems with nausea, constipation, and diarrhea." (*Id.*) He indicated that Plaintiff was no longer vomiting, and that her anxiety seemed to be under control. (*Id.*)

On June 7, 2005, Plaintiff saw Octavio De La Pena, M.D., at Digestive Health Associates, complaining of abdominal cramps, heartburn, and reflux. (*Id.* at 239.) He recommended a high fiber diet and fiber supplements. (*Id.* at 240.) Plaintiff reported feeling anxious, and he recommended that she follow-up with her primary care provider for her anxiety. (*Id.*)

On July 27, 2005, Elizabeth Seaberg, M.D., at Medical Center of Plano, performed an MRI of Plaintiff's right shoulder, which appeared normal. (*Id.* at 581.)

On August 4, 2005, Plaintiff saw Dr. Connor at North Texas Regional Cancer Center for a chemotherapy follow-up. (*Id.* at 639.) He noted that the pain in her right shoulder and anxiety had lessened. (*Id.*) He believed that tendinitis was causing her right shoulder pain and recommended physical therapy. (*Id.* at 640.)

On May 11, 2006, Plaintiff visited Dr. Connor for another follow-up visit, reporting anxiety, right shoulder pain, and upper right abdominal pain. (*Id.* at 630–31.) He noted that Plaintiff was taking several prescriptions, including Cimex, Hyoscyamine, Thymine, Nexium, Protonix, Ultracet, Hydrocodone, and Klonopin. (*Id.* at 630.)

On April 27, 2006, Plaintiff visited Dr. Garza at Digestive Health Associates for a follow-up

abdominal exam. (*Id.* at 235.) He opined that she suffered from post-cholecystectomy syndrome.[2] (*Id.*) On November 2, 2006, Plaintiff followed-up with Dr. Garza and reported that her heartburn and reflux were well-controlled by antacid medication. (*Id.* at 234.) Given Plaintiff's aggravating abdominal pain, he recommended a CAT scan of her upper abdomen. (*Id.*)

On February 9, 2007, Plaintiff saw Dr. Connor for a follow-up visit. (*Id.* at 746.) He reported that she "seems to be doing well," and her "right arm discomfort seems to have resolved altogether." (*Id.*)

On February 5, 2009, at a follow-up visit with Dr. Connor, Plaintiff stated that she was not experiencing any abdominal discomfort, nausea, or vomiting. (*Id.* at 737.) He noted that Plaintiff had a midline hernia, which could occasionally cause discomfort.[3] (*Id.*) It "was not something that she wanted to approach surgically", however. (*Id.*)

On February 13, 2009, Plaintiff saw Debbie Rushing, P.A., at Doctors of Internal Medicine, complaining of fatigue, right shoulder pain, and right foot pain. (*Id.* at 352.) Plaintiff explained that she might have broken her big toe. (*Id.* at 350.) She also indicated that physical therapy was not helping her shoulder pain, and that she continued to experience "a chronic dull ache." (*Id.*) Plaintiff was prescribed Zoloft and referred to a podiatrist for her foot pain. (*Id.* at 352.)

On May 22, 2009, Plaintiff saw David Garza, M.D., at Doctors of Internal Medicine, complaining of deep shoulder pain and right foot pain "in her great toe and second toe." (*Id.* at 338.)

---

[2] "Post-cholecystectomy syndrome (PCS) is defined as a complex of heterogeneous symptoms, consisting of upper abdominal pain and dyspepsia, which . . . persist after [a] cholecystectomy." POST-CHOLECYSTECTOMY SYNDROME, National Institute of Health (Apr. 1, 2015, 9:01 AM), http://www.ncbi.nlm.nih.gov/pmc/articles/PMC3473449/.

[3] "A hernia [occurs] when part of an internal organ or tissue bulges through a weak area of muscle. Most hernias are in the abdomen." HERNIA, National Institute of Health (Apr. 1, 2015, 9:09 AM), http://www.nlm.nih.gov/medlineplus/hernia.html.

She did not complain of foot pain at a follow-up appointment with Dr. Garza on July 20, 2009, but only of fatigue, depression, and difficulty concentrating. (*Id.* at 335.) She mentioned recent stressors in her life, including an upcoming family trip. (*Id.*) Dr. Garza increased her dosage of Cymbalta. (*Id.* at 337.)

On January 6, 2010, Plaintiff presented to Dr. Garza with radiating right shoulder pain. (*Id.* at 331.) She described it as "severe, constant, dull, throbbing, aching, and burning." (*Id.*)

On July 6, 2010, Plaintiff saw Dr. Garza for a follow-up exam, complaining of depression, fatigue, anxiety, and shoulder pain. (*Id.* at 323.) She explained that she averaged three to four hours of sleep per night, and her symptoms included "anxious mood, insomnia, decreased ability to concentrate, and sadness." (*Id.*) She also reported stress due to financial difficulties. (*Id.*)

On October 7, 2010, Dr. Garza referred Plaintiff to Christopher Tehlirian, M.D., a rheumatologist at Arthritis Centers of Texas. (*Id.* at 306, 321.) During her initial evaluation, he noted that Plaintiff had 11/18 tender points in her upper and lower extremities. (*Id.* at 307.) At her follow-up exam on November 5, 2010, he noted that she seemed to have symptoms consistent with fibromyalgia.[4] (*Id.* at 304.)

On July 18, 2011, Plaintiff underwent a psychiatric evaluation performed by David Kabel, D.O. (*Id.* at 363.) He opined that she suffered from a panic disorder and fibromyalgia. (*Id.* at 365.)

On January 3, 2012, Plaintiff saw Dr. Garza for a follow-up exam, complaining of fatigue, anxiety, and abdominal pain. (*Id.* at 825.) She stated that her abdominal pain was of moderate intensity and had lasted two weeks. (*Id.*) Dr. Garza referred her to a general surgeon. (*Id.* at 827.)

---

[4] "Fibromyalgia is a disorder characterized by widespread musculoskeletal pain accompanied by fatigue, sleep, memory and mood issues." FIBROMYALGIA, Mayo Clinic (Mar. 31, 2015, 4:10 PM), http://www.mayoclinic.org/diseases-conditions/fibromyalgia/basics/definition/con-20019243.

On April 30, 2012, Dr. Patel, D.O., at Solace Counseling tested Plaintiff's ability to perform work-related activities. (*Id.* at 805.) He determined that she had a substantial loss of ability to carry out simple instructions, maintain regular attendance at work, and concentrate for an extended period of time. (*Id.*) He noted that Plaintiff suffered from crying spells, appetite and sleep disturbances, difficulty thinking, and chronic depression, and opined that she would miss 4 or more days of work per month due to these symptoms. (*Id.* at 806.)

**3. Hearing Testimony**

On August 15, 2012, Plaintiff testified at a hearing before the ALJ. (*Id.* at 26.) She was represented by her attorney. (*Id.*)

Plaintiff testified that she was 47 years old. (*Id.* at 28.) She was married but had filed for divorce, and she had one daughter under the age of 18. (*Id.* at 28, 32.) Plaintiff had previously worked as a court interpreter. (*Id.* at 28, 33.) In 1999, she stopped working to raise her daughter and did not return. (*Id.* at 28.)

In 2004, after being diagnosed with colon cancer, Plaintiff underwent surgery and started receiving chemotherapy. (*Id.*) She claimed that chemotherapy "damaged so many things in [her] body." (*Id.*) She suffered from fibromyalgia, chronic pain, colitis, depression, and anxiety. (*Id.*) She experienced chronic pain all over her body, especially in her arms, legs, and feet. (*Id.* at 29.) Although she saw a pain management doctor, her chronic pain caused anxiety and nervousness. (*Id.* at 29, 30.) She took anxiety medicine, but it made her feel foggy and prevented her from thinking clearly. (*Id.* at 28, 30, 32.) She also suffered from fatigue that prevented her from working 40 hours per week. (*Id.* at 30.)

At home, Plaintiff could not cook, clean, or vacuum. (*Id.* at 32.) She also testified that her

chronic pain prevented her from being an active member of her community. (*Id.* at 29, 31.) She emphasized that she could no longer serve on her PTA, cultural diversity organization, or advocacy committee. (*Id.* at 31.)

**C. <u>The ALJ's Findings</u>**

The ALJ issued his decision denying benefits on November 21, 2012. (*Id.* at 10–19.) At step one, he found that Plaintiff had not engaged in substantial gainful activity since March 29, 2011. (R. at 12.) At step two, he found that Plaintiff had five medically determinable impairments: "anxiety, status post cancer, sleep disorder, hernia, and osteopenia." (*Id.*) He determined that Plaintiff did not have medically determinable fibromyalgia impairment because Exhibit 15/F, which documented her alleged fibromyalgia, failed to comply with the required "court ruling." (*Id.*) Despite finding that Plaintiff had five medically determinable impairments, the ALJ found that she did not have an impairment or combination of impairments that significantly limited her ability to perform basic work-related activities for twelve consecutive months. (*Id.* at 12–13.) He therefore found that Plaintiff did not have a severe impairment. (*Id.*) Because Plaintiff did not have a severe impairment, the ALJ did not proceed to the third, forth, or fifth steps and concluded that Plaintiff was not disabled at any time through the date of the decision. (*Id.* at 11, 18.)

## II. ANALYSIS

**A. <u>Legal Standards</u>**

**1. Standard of Review**

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.

1994); *see* 42 U.S.C. § 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence supports the Commissioner's decision. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988).

The scope of judicial review of a decision under the supplemental security income program is identical to that of a decision under the social security disability program. *Davis v. Heckler*, 759 F.2d 432, 435 (5th Cir. 1985). Moreover, the relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. *See id.* Accordingly, the Court may rely on decisions in both areas, without distinction, when reviewing an ALJ's decision. *See id.*

**2. Standard for Disability Determination**

To be entitled to social security benefits, a claimant must prove he or she is disabled as defined by the Social Security Act. *Leggett*, 67 F.3d at 563–64; *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992). When a claimant's insured status has expired, the claimant "must not only prove" disability, but that the disability existed "prior to the expiration of [his or] her insured status." *Anthony*, 954 F.2d at 295. An "impairment [that] had its onset or became disabling after the special earnings test was last met cannot serve as the basis for a finding of disability." *Owens v. Heckler,* 770 F.2d 1276, 1280 (5th Cir. 1985).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1"of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curiam) (summarizing 20 C.F.R. § 404.1520(b)–(f)) (currently 20 C.F.R. § 404.1520(a)(4)(i)–(v) (2012)). Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show there is other gainful employment available in the national economy that the claimant is capable of performing.

*Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the medical vocational guidelines, by vocational expert testimony, or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). After the Commissioner fulfills this burden, the burden shifts back to the claimant to show that he cannot perform the alternate work. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). "A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

**B. <u>Issues for Review</u>**

Plaintiff raises two issues for review:

1. The ALJ's step two finding is not supported by substantial evidence because it omitted consideration of [Plaintiff]'s medically determinable and severe fibromyalgia and chronic pain; and

2. The ALJ's step two findings are not supported by substantial evidence because he gave improper weight to the opinions of the treating physicians and rejected them without good cause.

(Doc. 15 at 1.)

**C. <u>Issue One: Severe Impairment</u>**

Plaintiff contends that the ALJ omitted consideration of her fibromyalgia and chronic pain when determining that she did not have a severe impairment at step two. (*See id.* at 1, 8.)

At step two of the sequential evaluation process, the ALJ "must consider the medical severity of [the claimant's] impairments." 20 C.F.R. § 404.1520(a)(4)(ii),(c) (2012). To comply with this regulation, the ALJ "must determine whether any identified impairments are 'severe' or 'not severe.'" *Herrera v. Comm'r of Soc. Sec.*, 406 F. App'x 899, 903 (5th Cir. 2010). Pursuant to the Commissioner's regulations, a severe impairment is "any impairment or combination of impairments

which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The Fifth Circuit has held that a literal application of this regulation would be inconsistent with the Social Security Act because the regulation includes fewer conditions than indicated by the statute. *Stone v. Heckler*, 752 F.2d 1099, 1104–05 (5th Cir.1985). Accordingly, in the Fifth Circuit, an impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." *Id.* at 1101. In other words, "the claimant need only . . . make a *de minimis* showing that her impairment is severe enough to interfere with her ability to do work." *Anthony v. Sullivan*, 954 F.2d 289, 294 n. 5 (5th Cir. 1992) (citation omitted). When determining whether a claimant's impairments are severe, an ALJ is required to consider the combined effects of all physical and mental impairments regardless of whether any impairment, considered alone, would be of sufficient severity. *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) (citing 20 C.F.R. § 404.1523) (finding that an ALJ is required to consider the combined effects of all physical and mental impairments regardless of whether any impairment, considered alone, would be of sufficient severity). Plaintiff has the burden to establish that her fibromyalgia and chronic pain are severe impairments. *See Bowen v. Yukert*, 482 U.S. 137, 146 n.5 (1987).

**1. Fibromyalgia**

Plaintiff contends that it is unclear what "court ruling" the ALJ relied on in finding that she did not have a medically determinable fibromyalgia impairment at step two. (Doc. 15 at 9.) If the ALJ relied on Ruling 12–2p, Plaintiff argues, his step two finding requires reversal because her fibromyalgia qualifies as a medically determinable impairment under that ruling. (*Id.* at 13.)

Social Security Rulings are agency rulings "published under the authority of the

Commissioner of Social Security and are binding on all components of the Administration." *Heckler v. Edwards*, 465 U.S. 870, 873 n. 3 (1984). An agency must follow its own rulings or procedures, even if those rulings or procedures are more rigorous than what would otherwise be required. *See Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000) (citing *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981)). The Rulings are therefore binding on the Commissioner. *Hall*, 660 F.2d at 119.

"Due to the complexity and the numerous cases dealing with fibromyalgia . . . , the SSA has issued Social Security Ruling [(SSR)] 12-2p to provide clearer guidance and policy interpretation of this impairment." *Titles II and XVI: Evaluation of Fibromyalgia*, SSR 12–2p, 2012 WL 3104869, at *1–6 (July 25, 2012); Harvey L. McCormick, *Fibromyalgia*, 1 SOC. SEC. CLAIMS & PROC. § 8:151 (6th ed.) (last updated Aug. 2014). Ruling 12–2p offers two tests for determining whether a claimant's fibromyalgia qualifies as a medically determinable impairment. *See* SSR 12–2p, 2012 WL 3104869, at *2–3.

Under the first test, a claimant has a medically determinable fibromyalgia impairment when he or she proves:

1. A history of widespread pain in all quadrants of the body lasting at least three months, including pain in the right and left sides of the body (both above and below the waist) and in the cervical spine, anterior chest, thoracic spine, or low back;

2. At least 11 positive tender points during a physical examination; and

3. Evidence that other disorders that could cause the symptoms or signs were excluded, such as evidence of examinations and tests that rule out other disorders that could account for the person's symptoms and signs.[5] *Id.*

Under the second test, a claimant has a medically determinable fibromyalgia impairment

[5] The first test is known as *The 1990 ACR Criteria for the Classification of Fibromyalgia*.

when he or she proves:

1. A history of widespread pain in all quadrants of the body lasting at least three months, including pain in the right and left sides of the body (both above and below the waist) and in the cervical spine, anterior chest, thoracic spine, or low back;

2. Repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems, waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and

3. Evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded.[6] *Id.* at *3.

In this case, the ALJ found that Exhibit 15F/8 referenced Plaintiff's fibromyalgia, but it "did not comply with [the] court ruling - need above waist and below right side and left side; consequently [fibromyalgia is] not a medically determinable impairment." (*Id.* at 12.) Although the ALJ did not specify the court ruling to which he was referring, there was substantial evidence in the record to support his finding that she did not have a medically determinable fibromyalgia impairment. *See* SSR 12–2p, 2012 WL 3104869, at *2–3; *Greenspan*, 38 F.3d at 236. Medical evidence indicated that Plaintiff did not suffer from widespread pain in her cervical spine, anterior chest, thoracic spine, or low back lasting at least three months as required by Ruling 12–2p. *See* SSR 12–2p § II(A)–(B). Although she complained of back pain after receiving her first dose of chemotherapy in October 2004, she reported no back pain at her third chemotherapy visit in November 2004. (R. at 607, 618.) Plaintiff's next complaint of back pain was not until her follow-up visit with Dr. Garza in April 2006. (R. at 234.) During that visit, Plaintiff complained of radiating shoulder and back pain, but, she did not report pain in her cervical spine, thoracic spine, or lower back. (*Id.*) In addition, the medical evidence does not show a history of widespread pain

[6] The second test is known as *The 2010 ACR Preliminary Diagnostic Criteria*.

in Plaintiff's lower left extremities. *See* SSR 12–2p. Rather, Plaintiff offered evidence of right foot pain shortly after undergoing a right foot bunionectomy in November 2009. (R. at 341, 343, 352.) Finally, although Dr. Jones noted that Plaintiff's pain was "consistent with fibromyalgia," her medical records failed to show that she was diagnosed with fibromyalgia during the relevant disability period. (R. at 370.) *See Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008) ("[A] diagnosis of fibromyalgia does not automatically entitle [a claimant] to disability benefits; particularly . . . where there is substantial evidence to support the ALJ's determination that [the claimant's] fibromyalgia was either improving or, at worst, stable.").

Plaintiff argues that the ALJ's step two finding requires remand because her fibromyalgia met both tests under Ruling 12-2p. (*See* doc. 15 at 11–13.) She points to medical records documenting her pain in her left and right upper abdomen, right lower abdomen, right arm and shoulder, back, and right foot. (R. at 232, 234-235, 237, 239, 304, 307 341, 350.) Although she offers evidence to support a finding that she suffered from fibromyalgia, judicial review of the ALJ's denial of benefits is limited to whether the ALJ's decision is supported by substantial evidence. *See Greenspan*, 38 F.3d at 236. Because the ALJ's step two finding that Plaintiff did not have a medically determinable fibromyalgia impairment is supported by substantial evidence of the record, remand is not warranted on this basis.

**2. Chronic Pain**

Plaintiff also contends that the ALJ committed reversible error in failing to "consider [her] chronic pain as a severe impairment in combination with her other impairments at step two." (Doc. 15 at 12.) Specifically, she argues that the ALJ "presumably found [her chronic pain] non-severe or considered it as part of [her] fibromyalgia . . . ." (*Id.*)

Here, the ALJ did not make any finding regarding Plaintiff's chronic pain at step two. (*Id.* at 13.) He acknowledged that Plaintiff had reported abdominal pain, shoulder pain, chronic pain from fibromyalgia, and "diffuse body pain." (*Id.* at 14–15.) He also noted that she was "assessed with chronic pain and was referred to pain management." (*Id.* at 16.) However, he ultimately concluded that she did not have a severe impairment or combination of impairments that significantly limited her ability to perform basic-related activities. (*Id.* at 13–18.) Accordingly, it does not appear that the ALJ considered Plaintiff's chronic pain as a medical impairment, severe or not, but that he only considered it a symptom of her fibromyalgia. (*See id.* at 12.)

Plaintiff argues that medical evidence in the record dating back to 2009 documents her ongoing chronic pain. (Doc. 15 at 14.) She cites to her reports in February 2009 of chronic tendinitis, chronic aches, and chronic arm pain. (R. at 350.) Plaintiff also cites to an examination performed by Dr. Kabel on July 18, 2011, diagnosing her with chronic pain. (*Id.* at 365.) She cites her medical release statement reporting chronic back pain and chronic shoulder pain. (*Id.* at 801.) Plaintiff also relies on an undated questionnaire completed by Dr. Garza, noting chronic pain and chronic fatigue. (*Id.* at 859–60.) He opined that Plaintiff's "chronic pain may interfere with her ability to focus" and that "she may not be able to work a 40 hr work week." (*Id.* at 860–61.) Finally, Plaintiff cites to a physician's report from July 2011 concluding that her "[c]hronic pain syndrome [is] consistent with fibromyalgia." (*Id.* at 370.)

Plaintiff also reported her chronic pain at the hearing. (*Id.* at 29.) She described constant pain throughout her body, specifically in her arms, legs, and feet. (*Id.* at 29.) She testified that she visited a pain management doctor, and that her chronic pain caused anxiety and nervousness. (*Id.* at 29, 30.) She explained that her pain prevented her from serving on the PTA and from

participating in her daughter's activities. (*Id.* at 29–31.)

Because Plaintiff's subjective complaints of chronic pain were corroborated by objective medical evidence in the record, the ALJ was required to consider the effect of Plaintiff's chronic pain in combination with her other impairments. He was required to consider the combined effects of all physical and mental impairments regardless of whether any impairment, considered alone, was sufficiently severe. *Loza*, 219 F.3d at 393. Moreover, he was required to consider the combined impact of Plaintiff's impairments throughout the disability determination process. 20 C.F.R. § 404.1523; *c.f. Mahoney v. Astrue*, 2009 WL 3097334, at *8 (N.D. Tex. 2009) (holding that an ALJ must acknowledge and consider potential impairments if their existence is manifested in the record). In failing to consider the effect of Plaintiff's chronic pain in compliance with 20 C.F.R. § 404.1523, the ALJ committed error. *See id.*

**3. Harmless Error**

Violation of a regulation constitutes reversible error and requires remand only "when a reviewing court concludes that the error is not harmless." *Pearson v. Barnhart*, 2005 WL 1397049, at *4 (E.D. Tex. May 23, 2005) (citing *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003)). Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error. *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. Nov. 28, 2006) (citing *Frank*, 326 F.3d at 622). In this case, had the ALJ considered Plaintiff's chronic pain, both singly and in combination with her other impairments, he could have found that she had a severe impairment and consequently found her disabled. Because it is conceivable that the ALJ could have reached a different disability determination, his error at step two is not harmless and requires remand. *See Fernandez v. Colvin*, No. EP–12–CV–00126–ATB, 2013 WL 1729210, at *9

(N.D. Tex. Apr. 19, 2013) (remanding case after finding that the ALJ's failure to consider the plaintiff's hypertension could have resulted in an improper disability determination).

**D. <u>Issue Two: Treating Physician Rule</u>**

Plaintiff contends that the ALJ erred when he "[did] not give much weight" to the opinions of her treating physicians, Drs. Garza and Patel, concerning her physical limitations. (Doc. 15 at 14.) She argues that the reasons advanced by the ALJ for rejecting both opinions are not set forth in the record pursuant to 20 C.F.R. § 416.927. (*Id*. at 14–15.)

The Commissioner is entrusted to make determinations regarding disability, including weighing inconsistent evidence. 20 C.F.R. § 404.1529(b). Every medical opinion is evaluated regardless of its source, but the Commissioner generally gives greater weight to opinions from a treating source. *Id.* § 404.1527(c)(2). A treating source is a claimant's "physician, psychologist, or other acceptable medical source" who provides or has provided a claimant with medical treatment or evaluation, and who has or has had an ongoing treatment relationship with the claimant. *Id.* § 404.1502. When "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence," the Commissioner must give such an opinion controlling weight. *Id.* § 404.1527(c)(2). If controlling weight is not given to a treating source's opinion, the Commissioner considers six factors in deciding the weight given to each medical opinion: (1) whether the source examined the claimant or not; (2) whether the source treated the claimant; (3) the medical signs and laboratory findings that support the given opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is made by a specialist or non-specialist; and (6) any other factor which "tend[s] to support or

contradict the opinion." *See id.* § 404.1527(c)(1)–(6).

While an ALJ should afford considerable weight to opinions and diagnoses of treating physicians when determining disability, sole responsibility for this determination rests with the ALJ. *Newton*, 209 F.3d at 455. If evidence supports a contrary conclusion, an opinion of any physician may be rejected. *Id.* A treating physician's opinion may also be given little or no weight when good cause exists, such as "where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id.* at 455–56. Nevertheless, "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in [then] 20 C.F.R. § 404.1527(d)(2)." *Id.* at 453. A detailed analysis is unnecessary, however, when "there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another" or when the ALJ has weighed "the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." *Id.* at 458.

Here, Dr. Garza found that Plaintiff had "chronic back pain, fibromyalgia, and chronic shoulder pain", and that she suffered from a permanent disability. (R. at 16.) His diagnosis was consistent with a report by Primacare Medical assessing Plaintiff with chronic pain. (*Id.*) On March 2012, Dr. Garza also found that Plaintiff "could not lift/carry objects more than 5 pounds for more than 0.5 hours per day and . . . [could] lift and carry less than 30 minutes per day." (*Id.*) These findings were consistent with examinations performed by Dr. Jones on July 25, 2011. (*See id.* at

15–16.) Although Dr. Jones found that Plaintiff had "no significant inability to sit, stand move about, lift, carry, or handle objects," he also diagnosed Plaintiff with chronic pain syndrome. (*Id.*) The record also included a medical assessment performed by Dr. Patel finding that Plaintiff suffered from a major depression disorder. (*Id.* at 16.) Dr. Patel's assessment was consistent with Dr. Kabel's psychiatric evaluation diagnosing Plaintiff with a panic disorder associated with "generalized anxiety and/or panic attacks." (*Id.* at 15.) The record also included evidence that Plaintiff was prescribed anxiety medication and was diagnosed with depression, anxiety, and fatigue by other health care providers. (*Id.* at 240, 352, 607, 630, 653, 663.)

The ALJ "[did] not give much weight to [Dr. Garza and Dr. Patel's] opinions" in finding that Plaintiff did not have a severe impairment. (*Id.* at 17.) Dr. Garza and Dr. Patel qualified as treating sources because they treated Plaintiff and maintained ongoing relationships with her. *See* 20 C.F.R. § 404.1502. Since the ALJ did not give controlling weight to the opinions of these treating sources, he was required to perform the six-factor analysis outlined in 20 C.F.R. § 404.1527(c)(1)–(6) before rejecting their opinions. He did not perform that analysis, but simply concluded that "[t]heir opinions [were] unsupported by the objective evidence, including but not limited to the evidence provided by those doctors themselves." (*Id.* at 17.) The ALJ did not weigh Dr. Garza or Dr. Patel's opinions against other medical opinions, find that one opinion was more well-founded than the other, or attempt to show good cause for rejecting their opinions. (*See* R. at 13–17.) The ALJ's failure to consider all of the evidence from Plaintiff's treating sources and failure to present good cause for rejecting their opinions was error. *See Newton*, 209 F.3d at 455–58; *see also Loza*, 219 F.3d at 393 (holding that an "ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position").

The ALJ's failure to apply the correct standard in considering the opinions of Dr. Garza and Dr. Patel was a legal error, not a procedural error. *See Waters v. Massanari,* No. 4:00–CV–1656–Y, 2001 WL 1143149, at *11 (N.D. Tex. Sept. 24, 2001) (finding that the ALJ had committed legal error when he improperly evaluated the opinions of a treating physician). The Fifth Circuit left the lower courts no discretion to determine whether a legal error is harmless. *Stone*, 752 F.2d at 1106 ("Unless the correct standard is used, the claim must be remanded to the Secretary for reconsideration."). Given the ALJ's legal error, this case should be remanded with directions to apply the correct legal standard as set forth in *Newton*. *See, e.g., Beasley v. Barnhart*, 191 F. App'x 331, 336 (5th Cir. 2006); *Locke v. Massanari*, 285 F. Supp. 2d 784, 404 (S.D. Tex. 2001)**.**

**III. CONCLUSION**

The Commissioner's decision is **REVERSED**, and the case is **REMANDED** for reconsideration.

**SO ORDERED on this 22nd day of July, 2015.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE